COMMUNICATIONS AUTHORITY OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. RIVERA BARRERAS, JUDGE, Respondent; LUIS FRANCISCO DELGADO, Intervener.

No. C-62-32.    Decided December 27, 1962.

2

*Martín Avilés Bracero* and *J. Paniagua Serracante* for petitioner. *José A. Suro* and *Antonio José Amadeo* for intervener.   *J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras,* and *Genaro Marchand, Assistant Solicitors General* for The Commonwealth of Puerto Rico and the Municipalities of San Juan, Vega Baja, and Barranquitas.   *Ramón Cancio,* counsel for the Puerto Rico Aqueduct and Sewer Authority, as amicus curiae.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In order to promote the general welfare and  increase commerce and prosperity, the Legislative Assembly of Puerto Rico by Act No. 212 of May 12, 1942, 27 L.P.R.A. § 291 *et seq.*, created a body corporate and politic "constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico by the name 'Puerto Rico Communications Authority'." In general terms, the  purposes underlying the creation of that agency were to develop and improve, own, operate, and manage any and all types of communications.   It was expressly vested with power "to appoint such officers, agents, and *employees* and vest them with such powers and duties, and to fix, change, and pay such compensation for their services as the Authority may determine" (§ 6(*m*), 27 L.P.R.A. § 296(*m*)) ; and with respect to appointments, removals, promotions, transfers, discontinuances, reinstatements, suspensions, leaves of absence and changes in grade, compensation or title thereof, it was directed to adopt "a general plan similar" to that which may be in effect for employees of the Commonwealth Government under the Personnel Act (§ 7, 27 L.P.R.A. § 297).[1]

---

[1] Manuel A. Pérez, Director of the Personnel Office in 1949, stated that this provision was designed for the convenience of providing "the flexibility necessary to enable the Authority to organize itself and enter upon its functions," but that evidently the purpose was to establish a merit system (Exh. 5).

On July 1, 1949, the Director of the Personnel Office approved the application made by the Communications Authority to include the employees of that agency in the Competitive Service.[2] As of that date the employees of the Communications Authority were included in the personnel system for government employees with the rights inherent in such status, such as permanence, participation in the uniform compensation plan, and others.

Subdivision 7 of the Personnel Rules promulgated by the Personnel Board and approved by the Governor of Puerto Rico on September 9, 1952, entitled Working Hours and Regulations for Leaves of Absence, provides in its pertinent part as follows:

Section 111 (3 R.&R.P.R. 647–111. *"Working hours*

"The working week for employees in the competitive and noncompetitive services shall not be less than 37½ nor more than 48 hours on the basis of five or six working days, *but in no case may the working day exceed 8 hours.* Each appointing authority shall, within the previous limitations, establish the duration of the working week for his employees and fix their daily working hours. Each appointing authority shall likewise adopt such regulations as he may consider convenient in order to keep attendance records of his employees, in accord with the working hours established by him, and shall give notice of such regulations to the Director." (Italics ours.)

Section 112 (3 R.&R.P.R. 647–112). *"Overtime*

"The program of work for each agency shall be made in such a manner as to reduce to a minimum the need to work in excess of the regular hours established for the employees of each agency. When the needs of the service require that an employee *work more than 48 hours in any one week, or that he work on any of the holidays enumerated in this subdivision, the*

---

[2] Section 8 of the Personnel Act, No. 345 of May 12, 1947, 3 L.P.R.A. § 648, provided in its pertinent part as follows:

"Any agency, public corporation, or political subdivision included in the exempt service or in the noncompetitive service may, at its own request and with the approval of the Director, be included in the competitive service as to the whole or any part of its functions, programs, or activities."

*employee shall be given compensatory leave for all hours worked in excess of the 48-hour weekly limit, or for all the hours worked on holidays.* The appointing authority may grant compensatory leave to the employees who are intermittently required to work in excess of the working day, even if the hours worked by such employees do not exceed the working week of 48. Compensatory leave shall be granted as soon as possible after the weekly or daily overtime. In no case may compensatory leave be granted whose total exceeds 30 days during any calendar year." (Italics ours.)

The former Rule XLIX of the Civil Service Regulations [3] on working hours, approved by the Governor of Puerto Rico on May 7, 1942 and which took effect the following May 11, provided as follows:

" . . . It shall be the duty of the head of every department and of other public services of the Insular Government of Puerto Rico to require all employees, of any rank or class, in the different departments and offices, to work not less than seven and one-half hours a day, without excluding lunch time, and excluding *Saturdays,* Sundays, holidays, and leaves of absence granted under Rule XXXIX. However, the head of any department or other public service of the Insular Government of Puerto Rico may increase the working hours herein required for any or all employees of his office whenever in his opinion the needs of the public service in the office under his direction warrant such an increase."

Luis Francisco Delgado began to render services as building conservation overseer of the Communications Authority on November 1, 1948. When that agency came under the provisions of the Personnel Act he was confirmed in that position as a regular employee in consideration of satisfactory services rendered during a period of six months prior to July 1, 1949. He took the corresponding oath of allegiance and entered on the execution of his employment and was given

---

[3] In connection with §§ 111 and 112 of the Personnel Board Regulations and the former Rule XLIX of the Civil Service Commission, see the concurrent opinion delivered by Mr. Justice Belaval in *Rullán v. Sec. of the Treasury,* 78 P.R.R. 497, 498–511 (1955).

the efficiency rating prescribed by the Personnel Office standards.

On November 18, 1960, Delgado filed a complaint against the agency in question claiming extra hours worked during a period of 10 years. He alleged that he had rendered services during three hours a day in excess of eight hours within a period of 24 consecutive hours, and invoked Act No. 10 of November 14, 1917 (32 L.P.R.A. §§ 3101-13)[4] as respects the procedural aspect of the claim, and Acts Nos. 379 of May 15, 1948 (29 L.P.R.A. § 271 et seq.) and 96 of June 26, 1956 (29 L.P.R.A. § 245 et seq., 1961 Supp.)[5] as respects the substantive aspect.

In its answer defendant set up several special defenses[6] which essentially raise the question whether the provisions of Act No. 379 supra, on working hours, are applicable to

---

[4] This Act establishing the procedure for wage claims was repealed and substituted by Act No. 2 of October 17, 1961, 32 L.P.R.A. §§ 3118–32 (1961 Supp.).

[5] The mention made in the complaint of the Minimum Wage Act of 1956 refers to the 10-year period to make claim. Section 32, 29 L.P.R.A. § 246(d) (1961 Supp.).

[6] The special defenses copied verbatim read as follows:

"That the complaint does not state facts sufficient to constitute a cause of action in favor of complainant and against appellee.

"That complainant received an official administrative appointment on July 1, 1949 from the Communications Authority of Puerto Rico for the competitive position of Building Conservation Overseer, duly classified and compensated in pursuance of the Act and Regulations of the Personnel Office of the Commonwealth of Puerto Rico.

"That since July 1, 1949 until the present time all employees and officers of appellee, including complainant, by operation of the Act and of their own initiative were included in the Personnel Office of the Government of Puerto Rico and, consequently, they are public employees and officers under the jurisdiction of that Act and Regulations in everything respecting working conditions in general.

"That complainant's legal status as public employee is subject to the Act and Regulations of the Personnel Office of the Commonwealth of Puerto Rico, and the said complainant has not exhausted all reliefs available to him through administrative channels in order to substantiate his case before the Personnel Board and other administrative agencies having jurisdiction over the matter, in the event his claim is genuine and true.

complainant, an employee covered by the Personnel Office regulations which we have copied above. The trial court dismissed the defenses interposed, and to review its ruling we issued a writ of certiorari.

*Lebrón* v. *Puerto Rico Aqueduct, etc.*, 68 P.R.R. 1 (1948), and *Tulier* v. *Land Authority*, 70 P.R.R. 249 (1949), considered the propriety of claims for extra hours worked by employees of two government agencies. However, they were decided on the basis of the provisions of the acts creating defendant instrumentalities: in *Lebrón* it was said that there was nothing in the Act creating it which exempt the Aqueduct Service from complying with the acts regulating the wages and working conditions of the workmen, and that, on the contrary, § 5(b) of Act No. 40 of May 1, 1945,[7] to the effect that "the wage rates and other terms and conditions of employment in the Service shall be not lower in compensation and, on the average, not less favorable to the interests of the employee than the wages, terms and conditions prevailing for work of a similar nature in the community in which said work is performed," contained an express mandate to the effect that the wage rates and the terms and conditions of employment should conform to the provisions of the laws in

---

"That since comp'ainant's legal status is that of a regular, permanent, and classified employee in the Competitive Service under Act No. 345, approved May 12, 1947, as subsequently amended, and the Regulations of the Personnel Board, neither the provisions of Act No. 10 of November 14, 1917, as amended, nor Act No. 379 of May 15, 1948, as amended, nor the Minimum Wage Act approved June 26, 1956, which have been invoked by complainant in the first paragraph of the complaint, are applicable to this case.

"That under all the circumstances of this case, complainant does not have a cause of action in his favor in order to base his claim on the provisions of Regulations No. 13 approved by the Minimum Wage Board of Puerto Rico, as recently amended."

[7] When the Aqueduct and Sewer Act was re-enacted by Act No. 163 of May 3, 1949 (Sess. Laws, p. 430, 22 L.P.R.A. § 141 *et seq.*), § 5(b) as well as § 5(a), which provided that the provisions of the Civil Service laws were applicable to all positions in the agency in question, were eliminated. By this date—1949—the Aqueduct Service had already requested and obtained its inclusion in the Personnel Act system.

force, among which was Act No. 49 of August 7, 1935 establishing the working hours; in *Tulier*, the same *ratio decidendi* was adopted, namely, the Act creating the Land Authority was examined in order to conclude that nothing therein exempted it from keeping and complying with the working period legislation and that, **on the contrary, by virtue of § § 65(b) and 67 of Act No. 26 of April 12, 1941, 28 L.P.R.A.** § § 463 and 482, which provide that the laborers shall receive for each day's work the regular wage or salary commonly paid in that particular zone or that which may be stipulated by law, and that the laborers, in certain cases, shall continue to receive the same benefits as if the farm were under the management of a lessee, it was evident that it contemplated compliance with the wage and hour legislation.[8] In both cases the question actually raised was whether those agencies were comprised within the definition of commercial, industrial, or agricultural establishment for gainful purposes contained in Act No. 49 of 1935, *supra*, which is identical in this respect with § 16 of the existing Act concerning working hours, No. 379 of May 15, 1948, 29 L.P.R.A. § 285. Hence, the basic question now before us was neither raised nor decided, namely, whether the fact that the agency has come under the regulations approved by the Personnel Act excludes *ipso jure* the application of the legislation on maximum and extra working hours.

■ Before considering this basic issue, it is well to note that the Act creating the Communications Authority does not contain provisions similar to § 5(b) of the original Aqueduct Service Act nor to § § 65(b) and 67 of the Land Law. The only references to the fixing of compensation appear in § 6(m) *supra* which we have copied in the initial paragraph of this opinion and in the final sentence of § 7(a), 27 L.P.R.A. § 297, to the effect that the Authority shall be subject to the

---

[8] With the exception of a limited number of office employees, the Land Authority—particularly as respects its field and factory workers—has not come under the Personnel Act system.

provisions of Act No. 8 of April 5, 1941 on minimum wage. We can not therefore apply the reasoning of the cases of Lebrón and Tulier to dispose of this appeal.

Act No. 379 provides that regular hours of work are eight hours during any period of twenty-four consecutive hours, forty-eight hours during any week, and two hundred and eight hours during any month (§ 3, 29 L.P.R.A. § 272) ; that extra hours are, among others, those worked in excess of the regular working period (§ 4, 29 L.P.R.A. § 273) ; and that *every employer* who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage equal to double the rate agreed upon for regular hours (§ 5, 29 L.P.R.A. § 274).  The last paragraph of § 16, 29 L.P.R.A. § 285, excludes from the application of the provisions *supra* the employees of the Commonwealth Government, of the municipal governments, of the Government of the Capital, and of the agencies or instrumentalities of those governments, excepting such agencies or instrumentalities as are devoted to agricultural, industrial, commercial or *public service* enterprises.  There is no question that complainant renders services to an agency devoted to a public service enterprise and that he is therefore covered by the local working period legislation, unless the action of the Communications Authority in coming under the Competitive Service provided by the Personnel Act has the legal effect attributed by appellant of prohibiting *ipso jure* the application of that Act.[9]

Delimiting clearly the question posed, we wish to point out that the regulation adopted by the Personnel Board does not have the scope evidently attributed of preventing a public employee **from claiming extra hours for services** rendered.  It merely provides a special manner for compen-

---

[9] Act No. 142 of June 30, 1961, 29 L.P.R.A. §§ 481-99 (1961 Supp.), to which we shall refer later, and Act No. 67 of June 20, 1962 (Sess. Laws, p. 143), had the effect of excluding *all* employees of the Communications Authority from the Competitive Service provided by the Personnel Act.

sating these extra hours, namely, by compensatory leave. The reason for this measure is due undoubtedly to the obvious budgetary limitations within which the government work must develop and to the impossibility of anticipating when the needs of the public service will require extra working hours. It should be noted that § 111 of the Personnel Rules *supra* provides that "in no case may the working day exceed 8 hours," and that § 112 *supra* makes reference to the hours worked in excess of 48 hours a week or on holidays. There is actually a perfect congruence between the working period defined in Act No. 379 and the existing regulatory provisions of the Personnel Office; the employee's right to receive additional compensation for extra work is fully recognized. This is consistent with the deference due the constitutional mandate contained in the Bill of Rights, § 16 of Art. II, L.P.R.A., Vol. 1, p. 183, which consecrates the right to an ordinary workday which shall not exceed eight hours, among the rights of employees, and expressly provides that "an employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed." And, as we have seen, the law on the matter provides in general terms for payment of double rate.

In the course of the debates in the Constituent Convention the need for excluding public employees from the aforesaid constitutional provision was not raised nor discussed at any time. The discussions hinged solely on the need for requiring the presence of special circumstances warranting extra work hours.[10] According to the purpose of this provision—JOSÉ ENRIQUE RODÓ sums it up in an unequalled manner in *El Mirador de Próspero*[11] in the following words: "Such revendication is based on the need to provide the effort in the measure of the normal resistance of the health and on the

---

[10] Journal of Proceedings of the Constituent Convention 2247-65 and 2277-80, Equity Publishing Co., 1961.

[11] *Obras Completas* 642 (Aguilar ed., 1957).

right to have time, outside the compulsory work, to relax the spirit or for personal and free activity"—it may be readily understood that there was no justification for a different treatment in the case of government employees. *Cf.* § 16 of the Police Act of Puerto Rico, No. 77 of June 22, 1956, 25 L.P.R.A. § 221*o* (1961 Supp.), and the corresponding provision of the Police Regulations, 25 R.&R.P.R. § 221d-20.

This situation contrasts with the one concerning the right to organize and bargain collectively provided in § 17 of the Bill of Rights, L.P.R.A., Vol. 1, p. 183, and which is recognized to employees of "agencies or instrumentalities of the government operating as private businesses or enterprises." In this connection, delegate Luis Negrón López repeatedly made it clear that in referring to the operation as private enterprises or businesses, it does not mean the nature of the business or enterprise *but the norm governing the personnel thereof,*[12] so that if an agency or instrumentality was comprised within the Personnel Office, its employees could not organize themselves nor bargain respecting the working conditions which would govern their relations with the enterprise. That was precisely the situation of the Communications Authority employees until the enactment of Act No. 142 of June 30, 1961, 29 L.P.R.A. §§ 481–99 (1961 Supp.), which conferred jurisdiction to the Labor Relations Board over those corporate instrumentalities which were originally included in the Exempt Service but which, at their request or otherwise, came under the Competitive Service pursuant to the provisions of the Personnel Act, in order that the employees and workers of such instrumentalities could fully exercise their right to organize and to bargain collectively through representatives of their own free choosing.[13]

---

[12] Journal of Proceedings of the Constituent Convention 1612-14 and 1618, Equity Publishing Co., 1961.

[13] This Act is supplemented by Act No. 67 of June 20, 1962 (Sess. Laws, p. 143). For the legislative history of Act No. 142, see Journal of Proceedings 1422–24 (1961); and of Act No. 67, see Journal of Proceedings 845-46 and 1520-21 (1962).

■ The regulations of the Personnel Board do not therefore have the effect of giving immunity to the government or the agency or instrumentality concerned from a claim for extra hours worked by its employees. It establishes only one form of payment—by compensatory leave—which is consistent with the provisions of the working period legislation. The trial court acted correctly in dismissing, as a question of law, the defenses set up. However, this does not preclude appellee from establishing at the proper time that any extra work performed by complainant was timely paid by the granting of compensatory leave or payment in cash.[14]

Regarding the period prior to September 9, 1952 covered by the complaint, the Civil Service Commission rule then in force made no provision for the payment of extra hours by granting compensatory leave. Since Act No. 379 is applicable to the Communications Authority employees, the extra hours worked which may be established by the evidence must be compensated at double rate.

The writ issued will be quashed and the order issued by the Superior Court, San Juan Part, on April 4, 1962 will be affirmed.

## ON RECONSIDERATION

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Both the Communications Authority of Puerto Rico, petitioner herein, and the Commonwealth and the Municipalities of San Juan, Vega Baja, and Barranquitas and the Aqueduct and Sewer Authority of Puerto Rico, as amici curiae,

---

[14] In the order of the trial court reference is made to the fact that, although it is subject to the regulations of the Personnel Office, payrolls were submitted from which it appears that the Authority paid extra hours to several employees. This is readily explained if we consider the nature of the work performed by a great majority of the employees—telegraph operators, telephone operators, line repairmen, etc.—whose services can not normally be dispensed with by granting compensatory leave.

have requested reconsideration of our judgment and opinion of December 27, 1962 rendered in this case.

After a careful consideration of the reasons adduced by the appearing parties in support of said reconsideration, we conclude that the exact scope of our former ruling calls for clarification.

The intervener claims compensation for extra hours worked by him in his employment with petitioner since November 17, 1950, pursuant to the provisions of Act No. 379 of May 15, 1948 (29 L.P.R.A. §§ 271–88), which regulates the working period in Puerto Rico and provides additional compensation for work performed during hours in excess of the regular work hours prescribed by that Act. Petitioner alleged certain special defenses, briefly, that the intervener held a competitive position in the Communications Authority as building conservation overseer since July 1, 1949, classified and compensated in accordance with the Personnel Act and the Personnel Rules of the Commonwealth of Puerto Rico, and, consequently, since the intervener is a permanent and regular public employee classified in the Competitive Service under the Personnel Act, the provisions of Act No. 379 do not apply to him.

██ We reaffirm that the intervener is entitled to receive compensatory leave pursuant to the terms of §§ 111 and 112 of the Personnel Regulations (3 R.&R.P.R. §§ 647–111 and 647–112), as of September 9, 1952, when these two rules went into effect, but we clarify that as a result of the approval of the request to include petitioner's employees in the Competitive Service, the intervener, like the other petitioner's employees, were excluded from the ambit of Act No. 379 *supra*. This Act regulates the working period of the workers, with certain exceptions, among which were included the employees of the government but not those of agencies and instrumentalities such as petitioner, while the purpose of the Personnel Act is to regulate the public service.

14

We are therefore dealing with two bodies of law which cover two different and defined classes of personnel. Although the Personnel Act was enacted in 1947, or prior to Act No. 379 *supra*, the latter did not repeal, neither expressly nor impliedly, § 8 of the former, and the same continued in full force so that the act of including petitioner's employees in the Competitive Service provided by the Personnel Act, pursuant to the provisions of § 8 of that Act, necessarily resulted in excluding them from the provisions of Act No. 379 until by virtue of Act No. 67 of June 20, 1962 (3 L.P.R.A. § 648(a)(40), 1962 Supp.) petitioner's employees were restored to the Exempt Service, that is, that they were excluded from the provisions of Rules 111 and 112, *supra*, and subjected anew to the provisions of Act No. 379.

■■ In view of the foregoing, it is clear that for any work performed between July 1, 1949 (when petitioner's employees were included in the Personnel System) and September 9, 1952, the intervener is not entitled to receive any additional compensation, since during that period he was included in the Competitive Service and at that time no additional compensation was provided under the Civil Service Regulations for government employees for overtime work. Only in that sense will our original judgment be modified.

In the event any doubt has arisen on the scope of the statement made in our original opinion to the effect that petitioner may establish that overtime work performed by the intervener was promptly compensated by granting compensatory leave or payment in cash, we clarify that this should be read together with footnote 14 of the opinion so that said payment substitutes the compensation made by way of compensatory leave which it had not been possible to grant because of the nature, circumstances and needs of the service which petitioner was bound to render uninterruptedly.

■ It is therefore evident that the statement in our former opinion in this case to the effect that "the regulations

of the Personnel Board do not therefore have the effect of giving immunity to the government or the agency or instrumentality concerned from a claim for extra hours worked by its employees," far from having the scope attributed by the amici curiae of voiding and rendering ineffective § 16 of Act No. 379 and § 112 of the Personnel Rules, sustains on the contrary the validity and effectiveness of these provisions, clarifying, however, that § 16 *supra* of Act No. 379 did not hinder nor invalidate the action which could be brought at any time under the authority of § 8 of the Personnel Act and § § 111 and 112 of the Personnel Rules, as was actually done in this case. In enacting § 112 *supra* there is no question that § 16 of the Bill of Rights of our Constitution was borne in mind, but not as a mandate, since the purpose of that section in providing, as respect *every employee*, that "an employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed," was to bring within constitutional rank the eight-hours working period established by the Act with respect to "the mass of the laboring class which, by reason of special abandonment, has historically been in need of social protection." Therefore, in *Miranda* v. *Falcón*, 83 P.R.R. 708 (1961), we concluded that that constitutional provision did not include traveling agents. According to our reasoning in that case, we concluded that government employees in the Competitive Service were not included either under the provisions of § 16 of the Bill of Rights.

The judgment of this Court, as modified in the manner aforesaid, will be affirmed.